IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES A. RUFAI,

     Plaintiff,

v.

GUIDED THERAPEUTICS, INC. and
GPB DEBT HOLDINGS II, LLC,

     Defendants.

CIVIL ACTION NO.

1:18-cv-02830-CC-CMS

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on the (1) Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant Guided Therapeutics, Inc. ("Guided Therapeutics") [Doc. 64]; and (2) Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant GPB Debt Holdings II, LLC ("GPB") [Doc. 66]. Guided Therapeutics and GPB (collectively, "Defendants") move to dismiss this case based, in part, on pro se Plaintiff Charles A. Rufai's failure to state a claim upon which relief can be granted. For the reasons discussed below, I recommend that the motions to dismiss be granted on this basis.

## I.   FACTS ALLEGED IN THE AMENDED COMPLAINT[1]

According to Plaintiff's pro se Amended Complaint, he is a dark-skinned, African-American male of Nigerian origin who speaks with a "coarse accent." [Am. Compl. ¶¶ 1–2].  On June 11, 2007, Defendant Guided Therapeutics hired Plaintiff as a full-time Controller for the company.  [Id. ¶¶ 3–4].  In his position, Plaintiff was responsible for preparing and filing financial statements with the U.S. Securities and Exchange Commission (the "SEC"), securing various SEC forms, completing audits and filings, as well as other financial and accounting matters as directed by Guided Therapeutics.  [Id. ¶ 5].

On an unspecified date, Guided Therapeutics secured a one-million-dollar loan from Defendant GPB, as set forth in a Securities Purchase Agreement (the "SPA") between Guided Therapeutics and GPB.  [Am. Compl. ¶¶ 10–11, 29–31]. According to Plaintiff, as a condition for granting the loan to Guided Therapeutics, the Chief Executive Officer (the "CEO") of GPB required that Plaintiff be replaced by GPB's own Controller, James Clavijo, a younger, Hispanic male with a fair complexion.  [Id. ¶ 1, 11–13].  Plaintiff claims that the CEO of Guided Therapeutics

---

[1]  This fact statement is taken from the facts alleged in Plaintiff's Amended Complaint [Doc. 61-1 ("Am. Compl.")], which I have accepted as true for purposes of resolving the pending motions to dismiss.  See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

agreed to replace Plaintiff with Mr. Clavijo, and that the Board of Directors for Guided Therapeutics (the "Board") signed off on the SPA. [Id. ¶¶ 18, 31].

Plaintiff alleges that on February 12, 2016, Mr. Clavijo sent an e-mail to the CEO of Guided Therapeutics stating, "[Plaintiff] can't be in charge of driving this progress[.]" [Am. Compl. ¶ 16]. Plaintiff also alleges that "[o]n various occasions, the CEO of GPB would pretend not to understand Plaintiff when he spoke and the CEO of Guided Therapeutics would translate Plaintiff's words for him." [Id. ¶ 17].

According to Plaintiff, on February 13, 2016, he sent an e-mail to the Board, auditors, and outside legal counsel regarding alleged violations of federal regulations relating to insider training. [Am. Compl. ¶¶ 19, 23–24]. Plaintiff claims that on February 15, 2016, the CEO of Guided Therapeutics informed another employee of Guided Therapeutics that "I will have to let [Plaintiff] go." [Id. ¶ 20].

Thereafter, the CEO of Guided Therapeutics notified Plaintiff that he was being replaced as the company's Controller, and on March 29, 2016, Plaintiff was issued a separation letter that stated that he was being terminated due to "Lack of Work." [Am. Compl. ¶¶ 32–33]. Plaintiff claims that on March 29, 2016, the CEO of Guided Therapeutics sent an e-mail to Plaintiff that indicated that his termination "obviously has nothing to do with [Plaintiff's] performance." [Id. ¶ 34]. According to Plaintiff, when he asked the CEO of Guided Therapeutics the reason for his

termination, the CEO stated, "Charles, I just have to let you go now.  I will pay you a week's salary for every year served."  [Id. ¶ 35].  Plaintiff alleges that the CEO of Guided Therapeutics also advised Plaintiff that the CEO of GPB was not happy that Plaintiff had reported certain violations relating to alleged insider trading to a law firm.  [Id. ¶¶ 36–37].  Plaintiff claims that the CEO of Guided Therapeutics also advised Plaintiff that "the CEO of GPB does not want you a Nigerian managing their funds[.]"  [Id. ¶ 26].  According to Plaintiff, he was the only Guided Therapeutics employee whose employment was terminated as a condition precedent for the company's acquisition of the GPB loan.  [Id. ¶ 41].

Plaintiff also claims that he is owed approximately three months of deferred wages, severance pay, unpaid vacation benefits, and interest.  [Am. Compl. ¶¶ 15, 42, 46–47].  Plaintiff alleges that Guided Therapeutics has acknowledged that Plaintiff is owed money but has not paid him.  [Id. ¶¶ 28, 42–44, 50–52].

On May 10, 2016, Plaintiff filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination on the bases of his race, age, and national origin, and retaliation for reporting company violations and unethical acts to the Board.  [Am. Compl. ¶ 45].

## II.   **PROCEDURAL BACKGROUND**

This is the second lawsuit that Plaintiff has brought relating to his termination. On July 10, 2017, Plaintiff initiated his first lawsuit in this Court against Guided Therapeutics and others.  See Rufai v. Guided Therapeutics, Inc., et al., Case No. 1:17-cv-02564-CC (N.D. Ga.) (the "First Lawsuit").  Plaintiff attempted to serve process on some of the defendants by various methods not sanctioned by the Court's procedural rules (i.e., by FedEx, by mail, by serving a co-worker of an individual defendant, etc.); thus, I issued an order requiring Plaintiff to properly serve all the defendants.  [First Lawsuit, Doc. 31].  Ultimately, on April 25, 2018, I issued a Report and Recommendation ("R&R") in the First Lawsuit recommending dismissal without prejudice for failure to effect service of process.  [First Lawsuit, Doc. 69].  The defendants filed objections to the R&R, arguing that the action should be dismissed with prejudice.  [First Lawsuit, Docs. 71, 72].  On May 11, 2018, Senior United States District Judge Clarence Cooper overruled the defendants' objections, adopted the R&R as the opinion of the Court, and dismissed the First Lawsuit without prejudice for insufficient service of process.  [First Lawsuit, Docs. 73, 74].  Plaintiff did not file timely objections to the R&R.  [First Lawsuit, Doc. 75].

One month later, on June 11, 2018, Plaintiff initiated the instant lawsuit by filing a complaint raising claims similar to those raised in the First Lawsuit.  [Doc.

1].  In this case, Plaintiff sued Guided Therapeutics, GPB, and several individually-named defendants.  [Id.].  Shortly thereafter, the defendants moved to dismiss the complaint, arguing, among other things, that the claims against the individual defendants should be dismissed based on Plaintiff's failure to timely serve them, and that the complaint should be dismissed as a shotgun pleading.  [Docs. 15, 23].  On January 22, 2019, I issued a R&R recommending that the claims against the individual defendants be dismissed for failure to effect service of process and that Plaintiff be given an opportunity to file an amended complaint against Guided Therapeutics and GPB.  [Doc. 52].  The defendants filed objections to the R&R, arguing that the action should be dismissed in its entirety with prejudice and that Plaintiff should not be permitted to amend his complaint.  [Docs. 54, 55].  Plaintiff did not file any objections to the R&R.  On February 11, 2019, Judge Cooper overruled the defendants' objections, adopted the R&R as the opinion of the Court, and granted Plaintiff an opportunity to file an amended complaint.  [Doc. 56].

On March 1, 2019, Plaintiff filed the Amended Complaint, which is the operative pleading in this case.  [Doc. 61].  In the Amended Complaint, Plaintiff alleges the following eighteen causes of action against Guided Therapeutics and GPB under the Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title

VII"), 42 U.S.C. § 1981 ("Section 1981"), the Dodd-Frank Act ("Dodd-Frank"), the

Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), the Equal Credit Opportunity Act

("ECOA") and its implementing regulations, and he also raises state law claims:

| Count | Claim | Defendant |
|---|---|---|
| Count 1 | ADEA Discrimination | Guided Therapeutics |
| Count 2 | Title VII Discrimination (National Origin) | Guided Therapeutics |
| Count 3 | Title VII Discrimination (Race) | Guided Therapeutics |
| Count 4 | Title VII Discrimination (Color) | Guided Therapeutics |
| Count 5 | Section 1981 Discrimination | Guided Therapeutics |
| Count 6 | Section 1981 Discrimination | GPB |
| Count 7 | Violations of Dodd-Frank and Sarbanes-Oxley | Guided Therapeutics |
| Count 8 | ADEA Retaliation | Guided Therapeutics |
| Count 9 | Title VII Retaliation | Guided Therapeutics |
| Count 10 | Section 1981 Retaliation | Guided Therapeutics |
| Count 11 | Violations of ECOA (Race) | GPB |
| Count 12 | Violations of 12 C.F.R. 1002.4 (Race) | GPB |
| Count 13 | Violations of ECOA (Color) | GPB |
| Count 14 | Violations of ECOA (National Origin) | GPB |
| Count 15 | Violations of 12 C.F.R. 1002.4 (National Origin) | GPB |
| Count 16 | Violations of 12 C.F.R. 1002.4 (Race) | GPB |
| Count 17 | Tortious Interference with Business Relations | GPB |
| Count 18 | Violation of O.C.G.A. § 34-7-2 | Guided Therapeutics |

[Am. Compl. ¶¶ 54–178]. Defendants have now moved to dismiss all the claims in

the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.[2]  [Docs. 64, 66].  Plaintiff filed responses to both

motions [Docs. 69, 70], and Defendants filed reply briefs [Docs. 72, 73].  The

motions are now fully briefed and ripe for consideration.

### III.  <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure can be granted only if the complaint, with all factual allegations accepted

as true, fails "to raise a right to relief above the speculative level[.]"  <u>Bell Atl. Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544, 555 (2007).  A plaintiff's pleading obligation "requires

more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do[.]"  <u>Id.</u>  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation

omitted).  In considering a motion to dismiss, the Court must eliminate any

allegations in the complaint that are merely legal conclusions, and then, where there

are well-pleaded factual allegations, assume their veracity and determine whether

---

[2]  Both Defendants raised other legal arguments, including arguments that the Amended Complaint should be dismissed based on Plaintiff's failure to comply with the Court's February 11, 2019 order and that the Amended Complaint should be dismissed as an impermissible shotgun pleading.  [Docs. 64 at 5–12; Doc. 66 at 7–11].  Because I am recommending that all of Plaintiff's claims be dismissed with prejudice for failure to state a claim, I have not addressed those arguments.

they plausibly give rise to an entitlement to relief.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).  Although reasonable inferences are made in a plaintiff's favor in considering a motion to dismiss, "'unwarranted deductions of fact' are not admitted as true . . . ."  See Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005) (citation omitted).

Where, as here, a plaintiff files a complaint pro se and is representing himself, the Court must liberally construe the complaint and hold it to less stringent standards than formal pleadings drafted by lawyers.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Nevertheless, a pro se plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure and allege facts sufficient "to raise a right to relief above the speculative level[.]"  See Twombly, 550 U.S. at 555.

## IV.   DISCUSSION

Even applying the liberal construction standard applicable to pro se pleadings, it is evident that Plaintiff's Amended Complaint fails to raise a right to relief above the speculative level as to either of the remaining defendants in this case.

**A.      GUIDED THERAPEUTICS'S MOTION TO DISMISS [DOC. 64]**

**1.      ADEA/Title VII Discrimination and Retaliation (Counts 1–4, 8–9)**

In Counts One through Four, Eight, and Nine of the Amended Complaint, Plaintiff raises various discrimination and retaliation claims under the ADEA and Title VII, claiming that Guided Therapeutics discriminated and retaliated against him on the bases of his age, national origin, race, and color.  [Am. Compl. ¶¶ 54–80, 104–15].  In its motion to dismiss, Guided Therapeutics argues that these claims are time-barred because Plaintiff received the right-to-sue notice from the EEOC on April 18, 2017, and Plaintiff had ninety days from this date to bring this lawsuit, but he initiated this lawsuit on June 11, 2018, more than ninety days later.  [Doc. 64 at 12–13].  In response, Plaintiff contends only that these claims should be deemed timely because, under Rule 15(c) of the Federal Rules of Civil Procedure, they "relate back" to his original complaint in the First Lawsuit.  [Doc. 70 at 6].

Under Title VII, a plaintiff must file his complaint in the district court within ninety days of his receipt of a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1); see also Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991).  Similarly, the ADEA provides that a plaintiff asserting a claim under that statute must file his complaint within ninety days of his receipt of a right-to-sue letter.  See 29 U.S.C. § 626(e); see also Kerr v. McDonald's Corp.,

427 F.3d 947, 951 (11th Cir. 2005).  In the instant case, Plaintiff received the right-to-sue letter from the EEOC on April 18, 2017.  [Doc. 61 at 5].  Plaintiff filed his initial complaint in the First Lawsuit on July 10, 2017 [First Lawsuit, Doc. 1], which was within the ninety-day period, but that complaint was dismissed for failure to perfect service [First Lawsuit, Docs. 69, 73].  He then filed a complaint in the instant lawsuit on June 11, 2018, clearly beyond the ninety-day period.  [Doc. 1].

"In limited circumstances, Federal Rule of Civil Procedure 15(c) permits amendments to pleadings that 'relate back' to the date of the original pleading." Abram-Adams v. Citigroup, Inc., 491 F. App'x 972, 975 (11th Cir. 2012).  The Eleventh Circuit, however, has explained that a re-filed complaint cannot "relate back" to a previously-dismissed action.  See id. (explaining that a re-filed complaint cannot "relate back" and revive a dismissed claim from an earlier lawsuit); Dade Cty. v. Rohr Indus., Inc., 826 F.2d 983, 989 (11th Cir. 1987) (reversing the district court's ruling that a second lawsuit could relate back to an earlier lawsuit where the court already had dismissed the first lawsuit and the plaintiff failed to appeal the first lawsuit's dismissal); Stein v. Reynolds Secs., Inc., 667 F.2d 33, 34 (11th Cir. 1982) (holding that the dismissal of an earlier lawsuit without prejudice does not authorize a subsequent lawsuit brought outside of the statute of limitations); Miller v. Georgia, 223 F. App'x 842, 845 (11th Cir. 2007) (holding that a previous dismissal without

prejudice of ADEA and Title VII claims did not permit the same claims to be re-filed outside the limitations period).  Based on this Eleventh Circuit precedent, I find that Plaintiff's re-filed complaint in the instant action cannot "relate back" to his original complaint in the First Lawsuit, because the First Lawsuit was previously dismissed.  Plaintiff had until July 17, 2017 (ninety days from April 18, 2017, the date he received the right-to-sue notice from the EEOC) to timely file a lawsuit with respect to his ADEA and Title VII discrimination and retaliation claims.  But the instant lawsuit was filed on June 11, 2018, nearly eleven months too late.

In his response brief, Plaintiff does not argue that the dismissal of his original complaint in the First Lawsuit tolled the limitations period.  In any event, I will address this potential argument.  "Although a court may equitably toll a limitations period, the plaintiffs must establish that tolling is warranted."  Bost v. Fed. Express Corp., 372 F.3d 1233, 1242 (11th Cir. 2004) (citation omitted).  "Equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence."  Id. (citation omitted).  "Equitable tolling is an extraordinary remedy which should be extended only sparingly."  Chavez v. Credit Nation Auto Sales, Inc., 966 F. Supp. 2d 1335, 1347 (N.D. Ga. 2013) (citation and internal quotations omitted).  The filing of a complaint that was later dismissed without prejudice does not automatically toll the limitations period for a future complaint.  See Miller, 223

F. App'x at 844–45 (the employee's filing of a complaint that was later dismissed without prejudice did not automatically toll the ninety-day limitations period for a future complaint); Bost, 372 F.3d at 1242 (explaining that the dismissal of an ADEA complaint, without prejudice, does not allow a later complaint to be filed outside the statute of limitations); Justice v. United States, 6 F.3d 1474, 1478–79 (11th Cir. 1993) (stating the general rule that the filing of a lawsuit later dismissed without prejudice does not automatically toll the statute of limitations).

Under certain circumstances, statutes of limitations may be equitably tolled, but only when some inequitable event caused the plaintiff to miss the deadline. Here, Plaintiff has not asked the Court to apply equitable tolling, and it is evident that he is not entitled to such relief. The First Lawsuit was dismissed because Plaintiff failed to act with due diligence. Plaintiff was repeatedly advised by both the defendants and the Court about what he needed to do to serve the defendants. I issued orders and instructions to Plaintiff regarding his failure to timely serve the defendants, but he never complied with those orders. During the course of the First Lawsuit, Plaintiff filed a total of three iterations of his complaint—an original complaint, a first amended complaint, and a second amended complaint—and the defendants moved to dismiss each of those complaints for failure to effect service of process. In recommending dismissal of the First Lawsuit, I noted that Plaintiff had been given

multiple opportunities to perfect service, and I detailed the extraordinary amount of time and effort that had been expended as a result of Plaintiff's inability (or unwillingness) to follow the Court's rules regarding service.  Plaintiff then failed to timely object to my R&R.  To the extent Plaintiff is now paying the price for having his First Lawsuit dismissed, the responsibility for that lies squarely with him.  There is no basis for equitable tolling.  See Justice, 6 F.3d at 1479 (explaining that courts, in their equitable capacity, will toll statutes of limitations, but only if the plaintiff establishes that such tolling is warranted and that there was an inequitable event that prevented the plaintiff's timely filing).

Although Plaintiff has not argued it, I have also considered whether the Georgia renewal statute might save Plaintiff's ADEA and Title VII claims.  Georgia Code Section 9-2-61 provides, in relevant part:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later[.]
>
> . . .
>
> The provisions of subsection (a) of this Code section granting a privilege of renewal shall apply if any action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state.

14

O.C.G.A. § 9-2-61(a), (c).  "The renewal statute is remedial in nature; it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits."  Hobbs v. Arthur, 444 S.E.2d 322, 323 (Ga. 1994).  The Georgia Supreme Court, however, has held that, "[t]he privilege of dismissal and renewal does not apply to cases decided on their merits or to void cases[.]"  Id. (quotation omitted).  "The original suit is void if service was never perfected, since the filing of a complaint without perfecting service does not constitute a pending suit."  Id.  Thus, Plaintiff's First Lawsuit is considered void under Georgia law because he failed to perfect service on any of the defendants.  See Towe v. Connors, 644 S.E.2d 176, 178 (Ga. Ct. App. 2007) ("Here, Towe's initial action, though filed within the statute of limitation period, was void because service was never perfected.  Thus, Towe's second lawsuit, filed outside the statute of limitation period, was not a renewal action and was properly dismissed.").

Accordingly, because Plaintiff's ADEA and Title VII discrimination and retaliation claims contain specific statutes of limitations periods, and Plaintiff's instant lawsuit was filed beyond the ninety-day limitations period, these claims against Guided Therapeutics should be dismissed with prejudice as time-barred.

## 2. <u>Section 1981 Discrimination and Retaliation (Counts 5 and 10)</u>

In Counts Five and Ten of the Amended Complaint, Plaintiff alleges that Guided Therapeutics discriminated and retaliated against him in violation of Section 1981. [Am. Compl. ¶¶ 81–87, 116–20]. Specifically, Plaintiff claims that the Board voted to approve the SPA, thereby "evidencing their belief that Plaintiff was not qualified to be director based [on his race.]" [<u>Id.</u> ¶¶ 84–85]. Plaintiff also claims that Guided Therapeutics retaliated against him based on the fact that the Board voted to approve the SPA after Plaintiff had opposed discrimination based on his race, color, and national origin. [<u>Id.</u> ¶ 118].

Section 1981 provides that all persons "shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[,]" 42 U.S.C § 1981(a), and "prohibits an employer from retaliating against its employee in response to the employee's complaint of race-based discrimination," <u>Braswell v. Allen</u>, 586 F. Supp. 2d. 1297, 1310 (M.D. Ala. 2008) (citations omitted). "Any § 1981 claim . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." <u>Domino's Pizza, Inc. v. McDonald</u>, 546 U.S. 470, 470 (2006); <u>see also</u> <u>Kinnon v. Arcoub, Gopman & Assocs., Inc.</u>, 490 F.3d 886, 890 (11th Cir. 2007) ("To state a claim under § 1981, a plaintiff must identify an impaired contractual relationship . . . under which the plaintiff has

rights.") (internal quotations omitted); Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1309 (11th Cir. 2010) (same).

Here, there is no dispute that Plaintiff, an African-American, is a member of a racial minority within the meaning of Section 1981. The issue central to resolving Plaintiff's Section 1981 claims, then, is whether Plaintiff has alleged an impaired contractual relationship under which he had rights. The only contractual relationship upon which Plaintiff premises his Section 1981 claims is the SPA. [Am. Compl. ¶¶ 84–85, 118–19]. Specifically, Plaintiff alleges that by voting to approve the SPA, Guided Therapeutics deprived Plaintiff of his rights under Section 1981. [Id.]. Plaintiff, however, has not alleged any facts in the Amended Complaint that he had any rights under this contractual relationship. The only parties to the SPA were Guided Therapeutics and GPB. I am aware of no legal authority standing for the proposition that someone merely affected by a contract—but who was not a party to that contract—can bring a Section 1981 claim based on that contract. Simply put, Plaintiff has no contractual rights in the contract itself. See Scott v. Mamari Corp., 530 S.E.2d 208, 211 (Ga. Ct. App. 2000) (citations omitted). Accordingly, Plaintiff's Section 1981 claims in Counts Five and Ten of the Amended Complaint are subject to dismissal for failure to state a claim.

### 3. **Violation of Dodd-Frank (Count 7)**

In Count Seven of the Amended Complaint, Plaintiff alleges that Guided Therapeutics violated the anti-retaliation provision of Dodd-Frank when it retaliated against Plaintiff after he reported alleged price suppression and insider trading to an external auditor, outside counsel, and the audit committee.  [Am. Compl. ¶¶ 95–103].  In its motion to dismiss, Guided Therapeutics argues that this claim must be dismissed because Plaintiff does not qualify as a whistleblower, as defined by the statute.  [Doc. 64 at 22–23].  In response, Plaintiff contends that he was a whistleblower because he reported the alleged price suppression and insider trading to an external auditor, outside counsel, and the audit committee.  [Doc. 70 at 9].

Dodd-Frank defines a whistleblower as "any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission."  15 U.S.C. § 78u-6(a)(6).  Dodd-Frank's anti-retaliation provision provides, in relevant part:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> > (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, . . . , and any other law, rule, or regulation subject to the jurisdiction of the Commission.

18

Id. § 78u-6(h)(1)(A)(iii).  "To sue under Dodd-Frank's anti-retaliation provision, a person must first "provid[e] . . . information relating to a violation of the securities laws to the Commission."  Digital Realty Tr., Inc. v. Somers, 138 S. Ct. 767, 772–73 (2018) (citations and internal quotations omitted).

Here, Plaintiff alleges that he was a whistleblower within the meaning of Dodd-Frank because he reported the alleged price suppression and insider trading to an external auditor, outside counsel, and the audit committee.  [Am. Compl. ¶¶ 98–99].  Plaintiff, however, has not alleged that he provided any information regarding these alleged violations to the SEC.  Therefore, he does not qualify as a whistleblower under Dodd-Frank and is thus ineligible to seek relief under Section 78u-6(h).  See Digital Realty Tr., Inc., 138 S. Ct. at 778 (holding that because the employee did not provide information to the SEC before his termination, he did not qualify as a whistleblower at the time of the alleged retaliation).  Accordingly, Plaintiff's Dodd-Frank violation claim in Count Seven of the Amended Complaint should be dismissed for failure to state a claim.

### 4.   **Violation of Sarbanes-Oxley (Count 7)**

In Count Seven of the Amended Complaint, Plaintiff also alleges that Guided Therapeutics violated Sarbanes-Oxley "by committing acts of reprisal against Plaintiff for providing information regarding conduct which Plaintiff reasonably

believed was unlawful price suppression and insider trading" to the Board, auditors, and outside counsel.   [Am. Compl. ¶ 99].   In its motion to dismiss, Guided Therapeutics argues that Plaintiff failed to exhaust his administrative remedies with respect to this claim because he did not file a complaint with the Secretary of Labor before bringing suit in federal court.   [Doc. 64 at 20–21].   In response, Plaintiff contends that "[t]he reports to the external auditor and outside counsel were adequate and did [not] warrant an additional complaint to the Secretary of Labor by Plaintiff." [Doc. 70 at 8–9].

> Sarbanes-Oxley's anti-retaliation provision provides, in relevant part, that:
>
> A person who alleges discharge or other discrimination by any person in violation of subsection (a) may seek relief under subsection (c), by—
>
>> (A) filing a complaint with the Secretary of Labor; or
>>
>> (B) if the Secretary has not issued a final decision within 180 days of the filing of the complaint . . . bringing an action at law or equity for de novo review in the appropriate district court of the United States[.]

18 U.S.C. § 1514A(b)(1).   Thus, to recover under Sarbanes-Oxley's anti-retaliation provision, an employee must first exhaust his administrative remedies by filing a complaint with the Secretary of Labor.   See Digital Realty Tr., Inc., 138 S. Ct. at 774–75 (explaining that Sarbanes-Oxley's anti-retaliation provision contains an

administrative-exhaustion requirement and a 180-day administrative complaint-filing deadline).

Here, Plaintiff has not alleged that he filed an administrative complaint with the Secretary of Labor before bringing the instant lawsuit.  In fact, he contends that he did not need to file such a complaint.  [Doc. 70 at 9].  He is wrong on this point. Plaintiff was required to first file an administrative complaint with the Secretary of Labor before bringing this claim in federal court, and his time for doing so has expired.  Thus, Plaintiff's Count Seven Sarbanes-Oxley violation claim must be dismissed for failure to exhaust administrative remedies.  See Bozeman v. Per-Se Techs., Inc., 456 F. Supp. 2d 1282, 1357–58 (N.D. Ga. 2006) (dismissing Sarbanes-Oxley Act claim for failure to exhaust administrative remedies).

### 5. Violation of O.C.G.A. § 34-7-2 (Count 18)

In Count Eighteen of the Amended Complaint, Plaintiff claims that Guided Therapeutics willfully violated Georgia Code Section 34-7-2 ("Section 34-7-2") when it failed to pay Plaintiff three months of earned wages prior to his termination. [Am. Compl. ¶¶ 174–78].  In its motion to dismiss, Guided Therapeutics argues that any claim under this statute must be dismissed because Guided Therapeutics had no obligation to pay Plaintiff anything under the statute; the statute does not apply to

heads of departments, which Plaintiff has alleged he was. [Doc. 64 at 23–24]. Plaintiff does not address this argument in his response brief. [Doc. 70 at 10–11].

Section 34-7-2 addresses actions for recovery of unpaid wages and states, in relevant part, that "[e]very person, firm, or corporation, . . . except officials, superintendents, or other heads or subheads of departments . . . , shall, upon the discretion of such person, firm, or corporation, make wage and salary payments to such employees or to their authorized representation[.]" O.C.G.A. § 34-7-2 (b).

Here, Plaintiff alleges that he worked as a full-time Controller for Guided Therapeutics and was "the head of a department." [Am. Compl. ¶¶ 3, 89, 153, 159]. In fact, in the Amended Complaint, Plaintiff alleges three separate times that he was the head of a department at Guided Therapeutics. [Id. ¶¶ 89, 153, 159]. The plain language of the statute provides that it does not apply to "heads or subheads of departments[.]" O.C.G.A. § 34-7-2(a); see also Shipley v. Hypercom Corp., No. 1:09-CV-0265-CAP-RGV, 2011 WL 13119102, at *22 (N.D. Ga. Feb. 15, 2011), report and recommendation adopted by, No. 1:09-CV-0265-CAP-RGV, 2011 WL 13121361 (N.D. Ga. Mar. 8, 2011) (ruling that the plaintiff could not recover under Section 34-7-2 because she was a regional managing director, which was considered a "head or subhead of [a] department"). Thus, Plaintiff's claim against Guided

Therapeutics for a violation of Section 34-7-2 in Count Eighteen of the Amended Complaint fails to state a plausible claim for relief and should be dismissed.

## B.   GPB'S MOTION TO DISMISS [DOC. 66]

### 1.   <u>Section 1981 Discrimination (Count 6)</u>

In Count Six of the Amended Complaint, Plaintiff alleges that GPB violated Section 1981 when it conditioned its contract with Guided Therapeutics "upon the condition precedent that an African American of [sic] could not be in charge of handling or disbursement of the loan proceeds." [Am. Compl. ¶ 90].  According to Plaintiff, by doing so, GPB deprived Plaintiff "of the right enjoyed by white citizens in the performance, enjoyment, benefits, and privileges of his employment in violation of [Section 1981]." [<u>Id.</u> ¶ 91].  In its motion to dismiss, GPB argues that Plaintiff's Section 1981 claim fails because "Plaintiff was neither a party to [the SPA] nor an intended beneficiary of it" and the SPA's "making and enforcement are thus wholly unrelated to the conduct about which Plaintiff complains." [Doc. 66 at 12].  In response, Plaintiff conclusorily contends that as an employee of Guided Therapeutics, he was a party to the SPA as well as an intended beneficiary of the SPA. [Doc. 69 at 5–6].

As discussed previously in connection with Guided Therapeutics's motion to dismiss, Section 1981 prohibits racial discrimination in the making and enforcement

23

of contracts.  See 42 U.S.C. § 1981.  To state a claim of race discrimination under Section 1981, a plaintiff must allege facts establishing that: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  See Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1270 (11th Cir. 2004) (citation omitted).  "To state a claim under § 1981 for interference with a right to contract, 'a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights.'"  Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1309 (11th Cir. 2010) (citation omitted).

Again, the issue central to the resolution of Plaintiff's Section 1981 discrimination claim against GPB is whether Plaintiff properly identified an impaired contractual relationship under which he had rights.  The problem with Plaintiff's claim is that he has not alleged that he was a party to the SPA or any facts showing that he had any rights under the SPA.  [Am. Compl. ¶ 90].  He simply alleges that he "would have been a beneficiary of the contract . . . ." [Id. ¶ 92].  Even assuming this is true, this allegation alone is insufficient to render Plaintiff a third-party beneficiary under the SPA.  "In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit.  The mere fact that he would benefit from performance of the

agreement is not alone sufficient." Scott v. Mamari Corp., 530 S.E.2d 208, 211 (Ga. Ct. App. 2000) (citations omitted). "Unless such an intention is shown on the face of the contract, . . . plaintiff acquires no right as the third party beneficiary." Plantation Pipe Line Co. v. 3-D Excavators, 287 S.E.2d 102, 104 (Ga. Ct. App. 1981). Here, Plaintiff has not alleged that the SPA clearly indicated that it was intended for Plaintiff's benefit; thus, Plaintiff has not sufficiently alleged that he had any rights under the SPA as a third-party beneficiary.

Accordingly, Plaintiff's Section 1981 discrimination claim against GPB in Count Six of the Amended Complaint should be dismissed for failure to state a claim.

## 2.   Violations of ECOA and 12 C.F.R. 1002.4 (Counts 11–16)

In Counts Eleven, Thirteen, and Fourteen of the Amended Complaint, Plaintiff claims that GPB violated the Equal Credit Opportunity Act, or the ECOA, when it "expressed in writing that Plaintiff can't be in charge of driving this progress." [Am. Compl. ¶¶ 121–27, 137–50]. Plaintiff alleges that this conduct violated the ECOA and amounts to discrimination on the bases of his race, color, and national origin. [Id.]. In Counts Twelve, Fifteen, and Sixteen of the Amended Complaint, Plaintiff raises claims against GPB for violations of the ECOA's implementing regulations, 12 C.F.R. 1002.4(a) and (b). [Id. ¶¶ 128–36, 151–63]. In its motion to dismiss, GPB argues that these claims fail because the ECOA addresses

discrimination in the context of credit transactions, and Plaintiff was neither an applicant nor a prospective applicant for credit from GPB, as required under the statute. [Doc. 66 at 16–17]. In response, Plaintiff contends that he "was a co-applicant for credit because he was a part of Guided Therapeutics when the loan application was made" and that he "was a beneficiary of a loan from GPB and as such was an 'aggrieved applicant.'" [Doc. 69 at 6–8].

The ECOA makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691(a)–(a)(1). The ECOA defines an "applicant" as "any person who applies to a creditor directly for . . . credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." Id. § 1691a(b). Section 1002.4(a) states that "[a] creditor shall not discriminate against an applicant on a prohibited basis regarding any aspect of a credit transaction." 12 C.F.R. 1002.4(a). Section 1002.4(b) states that "[a] creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application." 12 C.F.R. 1002.4(b). Here, Plaintiff alleges that GPB violated Section 1691(a)(1) of the ECOA as well as its

26

implementing regulations by discriminating against him based on his race, color, and national origin.  [Am. Compl. ¶¶ 121–27, 137–50].

Only an "aggrieved applicant" has standing under the ECOA to bring a private cause of action.  See Cannon v. Sec'y, U.S. Dep't of Agric., 649 F. App'x 892, 894 (11th Cir. 2016) (citations omitted); see also Meme v. Nissan of S. Atlanta, LLC, No. 1:16-CV-02019-ELR-RGV, 2016 WL 11583820, at *7 (N.D. Ga. Nov. 23, 2016), report and recommendation adopted by, No. 1:16-CV-02019-ELR, 2016 WL 11583818 (N.D. Ga. Dec. 19, 2016).  Here, there are no allegations in the Amended Complaint that Plaintiff was an "applicant" or a "prospective applicant" for credit with GPB.  Plaintiff has not alleged that he applied for credit directly or indirectly with GPB.  Rather, Plaintiff conclusorily alleges that "[a]s an employee of Guided Therapeutics, Plaintiff was part of the company and hence was an applicant of the loan that Guided Therapeutics applied for."  [Am. Compl. ¶¶ 122, 138, 145].

Moreover, the ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit, any person who regularly arranges for the extension, renewal or continuation of credit, or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  15 U.S.C. § 1691a(e).  Plaintiff has not alleged sufficient facts showing that GPB regularly extends, renews, or continues credit to constitute a creditor as defined under the

ECOA.  For this additional reason, Plaintiff has failed to provide a sufficient factual basis to establish a plausible claim under the ECOA and its implementing regulations.  See Roberts v. FNB S. of Alma, Ga., 716 F. App'x 854, 856 (11th Cir. 2017) (affirming dismissal of ECOA claim where the plaintiff did not "reflect that he was discriminated against on the basis of a ground protected by the ECOA.").

Accordingly, I recommend that Plaintiff's claims under the ECOA and its implementing regulations be dismissed for failure to state a claim.

### 3.    Tortious Interference with Business Relations (Count 17)

Finally, in Count Seventeen of the Amended Complaint, Plaintiff alleges that GPB tortiously interfered with Plaintiff's business relationship with Guided Therapeutics.  [Am. Compl. ¶¶ 164–73].  Specifically, Plaintiff alleges that GPB "acted purposely with malice and with the intent to injure when it induced Guided Therapeutics not to continue its business relationship with [Plaintiff]."  [Id. ¶ 166]. In its motion to dismiss, GPB argues that this claim should be dismissed because GPB acted with privilege in furthering its legitimate economic interests.  [Doc. 66 at 18–21].  In response, Plaintiff contends that he "showed that GPB acted improperly and without privilege because it required that as a condition of granting a loan to Guided Therapeutics that Plaintiff be replaced as controller."  [Doc. 69 at

8].  I note that Plaintiff has also alleged that he was told that the CEO of GPB had stated that he did not want a Nigerian managing GPB's funds.  [Am. Compl. ¶ 26].

Under Georgia law, to recover on a claim of tortious interference with business relations, a plaintiff must prove, in relevant part, improper action or wrongful conduct by the defendant without privilege.  See Tidikis v. Network for Med. Commc'n & Research, LLC, 619 S.E.2d 481, 486 (Ga. Ct. App. 2005).  To establish under the first element that the defendant acted "without privilege," the plaintiff must show that the defendant was a stranger to the contract or business relation at issue.  See Mabra v. SF, Inc., 728 S.E.2d 737, 739–40 (Ga. Ct. App. 2012) (citation omitted).  "One is not a stranger to the contract just because one is not a party to the contract[.]"  Atlanta Mkt. Ctr. Mgmt., Co. v. McLane, 503 S.E.2d 278, 282 (Ga. 1998).  "Those who have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and cannot have tortiously interfered."  Mabra, 728 S.E.2d at 740.  For purposes of Plaintiff's tortious interference claim, there are two potential contractual relationships at issue: (1) the SPA, and (2) Plaintiff's employment relationship with Guided Therapeutics.  The question, then, is whether Plaintiff has alleged that GPB is a stranger to these two contractual relationships.

First, it is clear that GPB was not a stranger to the SPA, because GPB was a party to the SPA. Thus, any tortious interference claim based on the SPA fails. As for Plaintiff's tortious interference claim relating to his employment relationship with Guided Therapeutics, Plaintiff's claim is that GPB wrongfully induced Guided Therapeutics to terminate Plaintiff's employment. [Am. Compl. ¶¶ 11–13]. These factual allegations, however, show that GPB also was not a stranger to Plaintiff's employment relationship. The facts, as alleged in the Amended Complaint, show that upon execution of the SPA, GPB had a direct economic interest in the employment relationship between Plaintiff and Guided Therapeutics, because GPB had a financial interest in Guided Therapeutics. Thus, it is clear that GPB was not a stranger to the employment relationship between Plaintiff and Guided Therapeutics. See Tidikis, 619 S.E.2d at 487 ("ACS has a financial interest in one of the parties to the contract, and it is not a stranger to the employment contract."); Jefferson-Pilot Commc'ns Co. v. Phoenix City Broad., Ltd. of Atlanta, 421 S.E.2d 295, 299 (Ga. Ct. App. 1992) (explaining that buyers, sellers, and lenders can all be parties "to a comprehensive interwoven set of contracts" and therefore do not tortiously interfere with contractual relationships). Because the facts alleged in the Amended Complaint show that GPB was not a stranger to the contractual relationships at issue in this case, it follows that GPB could not have tortiously interfered with those

30

relationships.  See Cox v. City of Atlanta, 596 S.E.2d 785, 788 (Ga. Ct. App. 2004) (explaining that where a defendant has a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise to the contract).

Accordingly, Plaintiff's claim for tortious interference with business relations against GPB (Count Seventeen) should be dismissed for failure to state a claim.

## V.   CONCLUSION

For the reasons stated, I **RECOMMEND** that (1) Guided Therapeutics's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 64] be **GRANTED**; (2) GPB's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 66] be **GRANTED**; and (3) Plaintiff's Amended Complaint [Doc. 61] be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED**, this 17th day of December, 2019.

Catherine M. Salinas
United States Magistrate Judge